## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

MICHAEL E. MCINERNEY,

        Debtor.

Chapter 11
Case No. 11-58953
Honorable: Thomas J. Tucker

_____/

### MOTION, PURSUANT TO FED. R. BANKR. P. 2014 AND LBR 9014-1, FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §327(e) AUTHORIZING THE EMPLOYMENT AND RETENTION OF ACKERMAN AND ACKMERMAN, PC AS SPECIAL COUNSEL FOR DEBTOR AND BRIEF IN SUPPORT

Michael E. McInerney ("Debtor") hereby submits this Motion, Pursuant to Fed. R. Bankr. P.

2014 and LBR 9014-1, For Entry of an Order Under 11 U.S.C. §327(e) Authorizing the Employment

and Retention of Ackerman and Ackerman, PC as Special Counsel for Debtor (the "Motion") and

Brief in Support. In support of this Motion, Debtor states:

### Jurisdiction and Venue

1.     The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A) and (O).

2.     Venue of this proceeding and this Application is proper in this District pursuant to 28

U.S.C. §§1408 and 1409. The statutory predicate for the relief sought herein is §327(e) of the

Bankruptcy Code.

### Background

3.     On July 11, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief

under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq* (the "Bankruptcy

Code").

4.     Debtor continues to operate its business and manage its properties as a debtor in

possession pursuant to §§1107(a) and 1108 of the Bankruptcy Code.

5.     No trustee or examiner has been appointed in this chapter 11 case, and no committee has been appointed or designated.

6.     Prior to the Petition Date, Debtor initiated a lawsuit against Charles E. Becker and Becker Ventures, LLC in the Oakland County Circuit Court, case No. 09-102922-CK and Charles E. Becker, Trustee Under Trust Agreement of Charles E. Becker, dated September 16, 1977, as amended, initiated a lawsuit against Debtor in the Oakland County Circuit Court, case no. 09-097738-CK (collectively the "Case"). Charles E. Becker, Becker Ventures, LLC and Charles E. Becker, Trustee Under Trust Agreement of Charles E. Becker, dated September 16, 1977, as amended, shall collectively be referred to herein as "Becker."

7.     The Case involves an oral agreement between Debtor and Mr. Becker relating to an interest in a series of ten (10) real estate investments made by Becker Ventures, LLC (which is owned and controlled by Mr. Becker) between 2002-2004. Extensive discovery was conducted during the pendency of the Case, including of electronic evidence on Becker's computer system, which led to a report by a stipulated neutral computer forensic expert appointed by the trial court concluding that electronic evidence had been deleted during the pendency of the Case. Becker filed a motion for summary disposition, arguing that Debtor's claim was barred by the parol evidence rule due to an integration provision in an Operating Agreement. Debtor argued that (1) the oral agreement was a separate agreement and thus not barred by the parol evidence rule; (2) the Operating Agreement had been amended in a manner that effectively nullified it as to Debtor, and (3) spoliation of evidence by Becker prevented Debtor from prosecuting the Case, including development of evidence which would have supported Debtor's position relative to Becker's parol evidence argument. In case no. 09-097738-CK, the trial court granted Plaintiff's motion for summary disposition and entered Judgment in it favor of Becker and against Debtor in the amount of

$2,454,101.65 plus interest. In case No. 09-102922-CK, the trial court granted summary disposition in favor of Becker and dismissed Debtor's claims against Becker. Both parties appealed the trial court's orders/judgments to the Court of Appeals which cases have been consolidated, Michigan Court of Appeals case no. 304411 and 305141 (the "Appeals").

8.     The issues presented to the Court of Appeals include (1) whether the trial court erred when it ruled that there was no genuine issue of material fact with respect to the oral agreement based on its rulings on the parol evidence and spoliation issues; (2) whether the trial court erred when it ruled that the Operating Agreement, including its integration provision, was applicable to Debtor; (3) whether the trial court erred when it ruled that the parol evidence rule was a bar to Debtor's claim because Debtor failed to demonstrate that the oral agreement was a separate agreement, irrespective of the inapplicability of the Operating Agreement to Debtor; and (4) whether the trial court erred when it ruled that Debtor's spoliation argument failed because Debtor had not demonstrated that the deleted electronic evidence was material and relevant in the case.

**Relief Requested**

9.     By this Application, Debtor seeks to employ and retain the firm of Ackerman and Ackerman, PC d/b/a Ackerman Ackerman & Dynkowski (the "Firm") as his special counsel with regard to the Appeals. Accordingly, Debtor respectfully requests entry of an order, pursuant to §327(e) of the Bankruptcy Code, authorizing him to employ and retain the Firm as his special counsel to perform the legal services necessary to defend and prosecute the Appeals.

10.    The Appeals are likely to be complex, requiring the assistance of counsel with (i) extensive experience in the Case, and (ii) specialized and substantial experience in litigation and other areas of the law. Debtor believes that the Firm satisfies each of these criterion.

11.    Debtor seeks to retain the Firm as his special counsel because of the Firm's extensive experience in and knowledge of the Case. The Firm has been involved as counsel as counsel for

Debtor in the Case since April 2009, initially as co-counsel and then, in January 2010, as primary counsel. It has briefed and argued some 30 motions, including 6 dispositive motions; it has conducted and/or defended approximately 10 depositions and conducted numerous witness interviews. It has reviewed vast quantities of hard copy discovery, numbering in excess of 500,000 pages; and he has been integrally involved in the process of compelling production of and review of the enormous quantities of electronic discovery, numbering some 48,000 search term hits. It has spent several hundred hours on this matter. The Firm was to be compensated for Pre-Petition work on a contingency fee basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.

12.     Subject to court approval under §330(a) of the Bankruptcy Code, compensation will be payable to the Firm on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm. The hourly rates charged by the Firm are consistent with the rates charged in matters of this type and are subject to periodic adjustments to reflect economic and other conditions.

13.     The Firm's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time. The expenses charged to Debtor's estate include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. The Firm will charge Debtor's estate for these expenses in a manner and at rates consistent with charges made generally to its other clients.

14.     The current hourly rates of the Firm's attorneys are set forth in the rate schedule

attached as Exhibit "2."

15.     The Firm intends to apply to this Court for allowance of compensation for professional services rendered and reimbursement of charges and disbursements incurred in this chapter 11 case in accordance with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules and orders of this Court.

### The Firm's Connections to Debtor

16.     To assist Debtor in funding the Case, in May 2009, the Firm loaned to Debtor $100,000.00, repayment of which is secured by a security interest in and lien on any net recovery from the Case. A copy of the Secured Promissory Note and Security Agreement are attached as Exhibit "3."

17.     To assist Debtor and his wife in paying real estate taxes assessed against their Jupiter, Florida residence, the Ackerman and Ackerman, PC Profit Sharing Trust Dated 10/1/84 loaned to Debtor and his wife $50,000.00, which obligation is secured by a second mortgage on Debtor's residence in Jupiter, Florida. A copy of the Promissory Note and Mortgage are attached as Exhibit "4."

18.     Mr. Ackerman loaned $115,000.00 to Debtor to fund operations of MEM Investments, LLC.

19.     Debtor's wife, Kimberly McInerney, owns 50% and Alan Ackerman's wife and 3 children own the remaining 50% (2,16,16,16 percent, respectively) of 100 West Long Lake Investments, LLC, a Michigan limited liability company, that owns a majority interest in SPG Holdings, LLC, a currently inactive plastic pallet business.

20.     Debtor managed and owned 14% of Post It Stables, Inc. d/b/a Pinnacle Race Course. Mr. Ackerman loaned Debtor $125,000 to fund operating deficits of Pinnacle. In January 2009, Debtor transferred his ownership interest in Pinnacle to Mr. Ackerman in exchange for forgiveness

of the loan.

21. From October 2007 through March 2010, the Firm employed Debtor.

## Applicable Law

22. 11 U.S.C. §327 governs a debtor in possession's employment of attorneys, accountants, appraisers, auctioneers, and other professional persons to represent or assist in carrying out duties under the Code. Section 327(e) provides that, when it is in the best interest of the estate, a debtor in possession may employ, for a "special purpose," other than to represent the debtor in possession in "conducting the case," an attorney who has represented the debtor. Such attorney need not be "disinterested," as is otherwise required by §327(a), provided that the attorney represents or holds no interest adverse to debtor or to the estate in respect of the matter upon which the attorney is to be engaged.

23. 11 U.S.C. §327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

24. Consequently, the only issues before the Court are whether: (i) that Firm's employment is in the best interest of the estate, and (ii) if the Firm is employed, would it, by virtue of its past, present, or anticipated future representation of the estate, represent an interest adverse to the Debtor or the bankruptcy estate. *See In re Covenant Financial Group Of America, Inc,* 243 B.R. 450 (Bankr. Ala 1999).

25. Therefore, the Motion should be granted as the Firm possesses no interest adverse to the Debtor or to the estate with respect to the matter on which such attorney is to be employed."

26. "To hold or represent an interest adverse to the estate" means (1) to hold or assert any

economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual or potential dispute in which the estate is a rival claimant, or (2) to possess a predisposition under circumstances that render such predisposition a bias against the estate. *In re Development Corp. of Plymouth, Inc.*, 283 B.R. 466 (Bankr. ED Mich 2002).

27.    The contingency fee arrangement between Debtor and the Firm does not provide a basis to deny this motion. *In re Development Corp. of Plymouth, Inc.*, 283 supra; *In re Motor Sales, Inc.*, 355 B.R. 26 (Bankr. ND Ohio 2006); *In re Scranton Electric Construction Company, Inc.*, 105 B.R. 1 (Bankr. Pa 1989). Therefore, where the interest of the special counsel and the interest of the estate are identical, with respect to the matter for which special counsel is retained, there is no conflict and the employment should be authorized. *Development Corp. of Plymouth, Inc.*, 283 B.R. at 468, quoting *In re AroChem Corp.*, 176 F.3rd 610, 622 (2nd Cir. 1999).

28.    Here, the interests of the estate and those of the Firm are completely aligned. Any recovery in the Case or Appeals will increase the amount available to satisfy creditors' claims and, therefore, benefit the estate.

29.    Debtor desires to retain the Firm because of the extensive legal services that may be required and the fact that the nature and extent of such services are not known at this time. To the best of Debtor's knowledge, the Firm does not hold or represent any interest adverse to Debtor or his estate, and the Firm's employment is necessary and in the best interest of Debtor and its estate. The Firm's representation of Debtor is essential to defend and prosecute the Appeals due to its intimate understanding of the Case and the substantial time and cost required to assimilate new counsel.

## No Prior Request

30.    No prior application for the relief requested herein has been made to this or any other

Court.

WHEREFORE, Debtor respectfully requests that the Court enter an Order, substantially in

the form attached hereto as Exhibit "1," authorizing Debtor to employ and retain Ackerman and

Ackerman, PC, as special counsel for Debtor, and grant such further relief as is just and proper.


/s/  Michael E. McInerney
Michael E. McInerney


Dated: October 24, 2011

**EXHIBIT "1"**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

MICHAEL E. MCINERNEY,                                    Chapter 11
                                                        Case No. 11-58953
      Debtor.                              Honorable: Thomas J. Tucker

_____/

## ORDER, PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE and LBR 2016-3, AUTHORIZING THE EMPLOYMENT AND RETENTION OF ACKERMAN AND ACKERMAN, PC AS SEPCIAL COUNSEL FOR DEBTOR

Upon Debtor's Motion, Pursuant to Fed. R. Bankr. P. 2014 and LBR 9014-1, for Entry of an Order Under 11 U.S.C. §327(e) Authorizing the Employment and Retention of Ackerman and Ackerman, PC as Special Counsel for Debtor (the "Motion"); and the Court being satisfied that its employment is necessary and is in the best interest of the estate; notice of the Motion being adequate and sufficient; and after due deliberation and sufficient cause appearing therefor;

NOW THEREFORE, upon the Motion:

IT IS HEREBY ORDERED that the Motion is granted;

IT IS FURTHER ORDERED that, in accordance with §327(e) of the Bankruptcy Code, Debtor is authorized to employ and retain the firm of Ackerman and Ackerman, PC as its special counsel, effective as of July 12, 2011.

IT IS FURTHER ORDERED that fees and expenses are subject to approval of the Court.

**EXHIBIT "2"**

**Ackerman & Ackerman, PC**

Hourly Rate Schedule


Alan Ackerman            $650.00

Darius W. Dynkowski      $600.00

**EXHIBIT "3"**

## Secured Promissory Note

**$100,000**                                                          **Date: May 1, 2009**

FOR VALUE RECEIVED, Michael E. McInerney ("Borrower"), promises to pay ON DEMAND to the order of Ackerman, Ackerman & Dynkowski ("Holder"), at 100 W. Long Lake Road, Suite 210, Bloomfield Hills, MI 48304, or at such other place as Holder may designate in writing, the principal sum of One Hundred Thousand Dollars ($100,000), or as much of such amount as has been advanced by Holder and is outstanding from time to time, plus interest as provided below, all in lawful money of the United States of America, in accordance with the terms hereof.

The unpaid principal balance of this secured promissory note shall bear interest, computed upon the basis of a year of 360 days, at the rate equal to the Prime Rate of interest from time to time in effect as published in the Wall Street Journal (the "Interest Rate").

As security for its obligations under this Note, Borrower shall grant Holder a security interest in certain of Borrower's assets, specifically any net recovery by Borrower in the litigation currently pending in Oakland County Circuit Court generally entitled 'Becker v. McInerney' (whether in one or more separate lawsuits).

This Note may be prepaid, in whole or in part, without the prior written consent of Holder. All payments received hereunder shall, at the option of Holder, first be applied against accrued and unpaid interest and the balance against principal.

Upon the occurrence and during the continuance of any of the following events (each an "Event of Default"), Holder, at its option, and without notice to Borrower, may declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest, to be immediately due and payable: (a) Borrower's failure to pay the outstanding indebtedness of this Note when due hereunder, whether at maturity or otherwise, which failure continues for more than ten (10) days after the due date; (b) the appointment of a receiver or custodian over a material portion of Borrower's assets, which receiver or custodian is not discharged within sixty (60) days of such appointment; or (c) any voluntary or involuntary bankruptcy proceedings are commenced by or against Borrower, which proceedings are not set aside within sixty (60) days from the date of institution thereof. All costs and expenses of collection, including, without limitation, reasonable attorneys fees and expenses, shall be added to and become part of the total indebtedness evidenced by this Note.

Acceptance by Holder of any payment in an amount less than the amount then due shall be deemed an acceptance on account only, and Borrower's failure to pay the entire amount then due shall be and continue to be a default. Upon the occurrence of any failure of Borrower to pay any amounts due hereunder, the failure of Holder to demand strict performance of any obligation of Borrower, shall not constitute a waiver of any such rights, nor a waiver of such rights in connection with any future default on the part of Borrower. Borrower hereby waives presentment for payment, demand, notice of non-payment, notice of protest or protest of this Note, and Holder diligence in collection or bringing suit.

This Note shall be binding on Borrower and its successors and assigns and the benefits hereof shall inure to Holder and its successors and assigns. This Note shall be governed by the laws of the State of Michigan.

By: _____
        Michael E. McInerney

# Security Agreement

This Security Agreement, by and between Michael E. McInerney (the "Borrower"), and Ackerman, Ackerman & Dynkowski (the "Lender"), made as of May 1, 2009.

1.    **Grant of Security Interest.** Borrower hereby grants to Lender, whose address is 100 W. Long Lake Road, Suite 210, Bloomfield Hills, MI 48403, a security interest in the Collateral, as defined below, to secure the payment and performance of all of the Liabilities (as defined below).

"Liabilities," as used in this Agreement shall mean the obligations of Borrower to Lender under the May 1, 2009 Promissory Note issued by Borrower to Lender.

2.    **Description of Collateral.** "Collateral," as used in this agreement, means the following:

(a)    any and all rights of recovery , net of any and all obligations, of Borrower in connection with the litigation matters currently pending in Oakland County Circuit Court entitled 'Charles E. Becker v. Michael E. McInerney' and 'Becker Ventures LLC v. MEM Investments LLC', and any other litigation matters arising out of or in connection with the claims and counterclaims of the parties encompassed by such litigation matters;

(b)    all present and future books, records, and data of the Borrower relating to any of the above; and

(c)    all present and future accessions, additions and attachments to, proceeds, parts, products, replacement, substitutions, and rights arising out of, any of the above, including but not limited to stock rights, subscription rights, interest, distributions, dividends, stock dividends, stock splits, or liquidating dividends, renewals, all cash and Accounts, insurance policies and proceeds, arising from the sale, rent, lease, casualty loss or other disposition of any of the above and cash and other property which were proceeds of any of the above and are recovered by a bankruptcy trustee or otherwise as a preferential transfer by Borrower.

3.    **Representations, Warranties, and Covenants.** Borrower represents and warrants to and covenants with the Lender that: (a) the execution and delivery of this Agreement and the performance of the obligations it imposes (i) are the valid and lawful undertakings of Borrower; (ii) do not contravene the terms of any agreement or other obligation by which Borrower's is bound.

4.    **Default/Remedies.** If any of the Liabilities are not paid, when due or Borrower otherwise defaults in its material obligations under the May 1, 2009 Promissory Note, then the Lender shall have the rights and remedies provided by law or this Agreement.

5.    **Miscellaneous.**

(a)    At its option the Lender may, but shall be under no duty or obligation to, discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral, pay for insurance on the Collateral, and pay for the maintenance and preservation of the Collateral.

(b)    No delay on the part of Lender in the exercise of any right or remedy shall operate as a waiver, no single or partial exercise by the Lender of any right or remedy shall preclude any other exercise of it or the exercise of any other right or remedy, and no waiver or indulgence by the Lender of any default shall be effective unless in writing and signed by an authorized officer of the Lender, nor shall a waiver on one occasion be construed as a waiver of that right on any future occasion or a waiver of any other right.

(c) If any provision of this agreement is invalid, it shall be ineffective only to the extent of its invalidity, and the remaining provisions shall be valid and effective.

(d) All rights of the Lender shall inure to the benefit of the Lender's successors and assigns; and all obligations of the Borrower shall bind the Borrower's heirs, executors, administrators, successors and assigns.

(e) The Borrower shall pay or reimburse the Lender for all reasonable costs, fees and expenses incurred by the Lender or for which the Lender becomes obligated in connection with the enforcement of this agreement.

(f) A carbon, photographic or other reproduction of this agreement is sufficient, and can be filed as a financing statement, The Lender is appointed the Borrower's attorney-in-fact for the limited purpose of executing any financing statement on Borrower's behalf covering the Collateral.

(g) The terms and provisions of this security agreement shall be governed by Michigan law.

**Borrower:**

By:_____
    Michael E. McInerney

**Lender:** Ackerman, Ackerman & Dynkowski

By:_____
    Alan T. Ackerman

2

**EXHIBIT "4"**

$50,000.00                                            January 11, 2010

## <u>PROMISSORY NOTE</u>

MICHAEL E. McINERNEY and KIMBERLY R. McINERNEY, husband and wife, whose address is 4086 Nearbrook Road, Bloomfield Hills, Michigan 48302-2134 (hereinafter collectively referred to as "Maker"), for value received, hereby jointly and severally promise to pay to the order of ACKERMAN AND ACKERMAN, P.C. PROFIT SHARING TRUST DATED OCTOBER 1, 1984, AS AMENDED AND RESTATED, whose address is 100 West Long Lake Road, Suite 210, Bloomfield Hills, Michigan 48304-2774 (hereinafter referred to as "Payee"), the principal sum of Fifty Thousand Dollars and 00/100 ($50,000.00), together with interest at the rate of _Five_ Percent ( 5 %) per annum until the balance of principal is paid, on the following terms and conditions.



Maker shall pay all interest on the Note together with the principal balance on the Note, on the first (1st) anniversary date of this Note (January 11, 2011).

Maker may prepay all or any portion of the principal balance hereof at any time after the date hereof without penalty and without prior written notice to Payee.

All payments made pursuant to this Note shall be applied first against accrued interest and the balance against principal, and all such payments are to be made to the address above of the Payee or at such other place as Payee may from time to time designate.

Payment of this Note is secured by the Third Mortgage dated on the 11th day of January, 2010 (the "Mortgage"), entered into by and between Maker and Payee of same date hereof, on the following described property:

Property located at 117 Ocean Key Way, Jupiter, Florida 33477, more particularly described as follows:

Page 1 of 3

LOT 5, JUPITER KEY NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 71, PAGE(S) 173 OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.

In the event Maker fails to pay any amount due hereunder within ten (10) days after the date such amount is due, Maker shall be in default hereunder.

In the event of default hereunder, including the occurrence of any event of default defined by the Mortgage or any other agreement entered by and between Maker and Payee providing security for payment by Maker to Payee of this Note, Payee may, without notice to Maker, declare the entire unpaid principal balance of this Note, together with all accrued and unpaid interest thereon, including the right to assess the highest rate of interest permitted by Florida law, immediately due and payable in full. In the event of any default hereunder or under the Mortgage by Maker, Payee shall be entitled to recover from Maker, in addition to the unpaid principal balance hereof and all accrued interest, an amount equal to all costs and expenses actually incurred by Payee in connection with the enforcement and collection of this Note, including but not limited to actual court costs paid, legal, accounting and other professional fees actually incurred and the like. The waiver or failure by Payee hereunder to fully enforce any or all rights and remedies available to Payee in the event of a default hereunder by Maker or under the Mortgage shall not be deemed to constitute a waiver of any prior, subsequent or contemporaneous default by Maker

Maker hereby waives demand, protest, presentment for payment, notice of dishonor, notice of protest, diligence in bringing suit against any party, resort to collateral and impairment of collateral, and hereby consents that the time for payment of all or any part of the principal amount, and of the interest hereon, may be extended from time to time by Payee without notice, and that any

Page 2 of 3

such extension shall not discharge or otherwise impair the obligation of Maker to Payee represented by this Note.

Executed the date first above written.

MAKER:

_____
MICHAEL E. McINERNEY

_____
KIMBERLY R. McINERNEY

I:\Wpdocs\Ep\McINERNEY, MICHAEL\PromissoryNote- McInerney to Ackerman Firm Pension Plan.wpd

RECORD AND RETURN TO:

Prepared By:
Steven A. Belson
Belson Law Group
2500 N. Military Trail, Suite 200
Boca Raton, FL 33431
Property Control Number: 30-43-41-08-26-000-0050

(Space Above This Line For Recording Data)

THIRD

# MORTGAGE

**THIS MORTGAGE** ("Security Instrument") is given on this 11ᵗʰ day of January, 2010. The mortgagors are **MICHAEL E. McINERNEY and KIMBERLY R. McINERNEY**, husband and wife, whose address is 4086 Nearbrook Road, Bloomfield Hills, Michigan 48302-2134 (hereinafter collectively referred to as "Borrower") This Security Instrument is given to **ACKERMAN AND ACKERMAN, P.C. PROFIT SHARING TRUST DATED OCTOBER 1, 1984, AS AMENDED AND RESTATED**, its successors or assigns, whose address is 100 West Long Lake Road, Suite 210, Bloomfield Hills, Michigan 48304-2774, as Mortgagee (hereinafter referred to as "Lender"). Borrower owes Lender the principal sum of Fifty Thousand Dollars and 00/100 Cents **(U.S. $50,000.00).**

This debt is evidenced by Borrower's Promissory Note dated January 11, 2010 ("Note"), which provides for the payment of interest and principal due on the Note on January 11, 2011. Interest is to be paid at a rate of ~~Five~~ Percent ( _5_ %) per annum This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **Palm Beach County, Florida:**

**LOT 5, JUPITER KEY NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN PLAT BOOK 71, PAGE(S) 173 OF THE PUBLIC RECORDS OF PALM BEACH COUNTY, FLORIDA.**

which address is 117 Ocean Key Way, Jupiter, Florida 33477

**TOGETHER WITH** all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower **COVENANTS** that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property subject to the first mortgage dated October 30, 2000, by and between Borrower, as mortgagor, and Northern Trust Bank, FSB, as mortgagee, as modified on September 1, 2003 (the "first mortgage"), and subject to the second mortgage dated September 11, 2007, by and between Borrower, as mortgagor, and Citizen Bank, as mortgagee (the "second mortgage") Borrower warrants and will defend the title to the Property against all claims and demands, subject to any encumbrances of record

**THIS SECURITY INSTRUMENT** combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any other charges due under the Note.

2. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraph 1 shall be applied: first, to any prepayment charges due under the Note; second, to interest due; third, to principal due; and last, to any late charges due under the Note

(page 1)        Initials: _(MM) KRM_

3. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations directly to the person and taxing authority owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in legal proceedings which, in the Lender's opinion, operates to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice. Notwithstanding the foregoing, Lender approves and acknowledges Borrower's first mortgage and second mortgage liens over this Security Instrument in favor of Northern Trust Bank, FSB, and Citizen Bank, respectively.

4. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. The insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 6.

All insurance policies and renewals shall be approved by Lender and shall include a standard mortgage clause naming Lender as the loss payee to the extent of sums due Lender from Borrower. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days of notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the annual payments referred to in paragraph 1 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

5. **Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall not destroy, damage or impair the Property, allow the property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 16, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower' occupancy of the Property. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

6. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured

by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 6, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 6 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

7. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to the inspection.

8. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the annual payments referred to in paragraph 1 or change the amount of such payments.

9. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

10. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

11. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

12. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property address or any other

(page 3)    Initials: _____

address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph

13. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable

14. **Borrower's Copy.** Borrower shall be given a copy of the Note and of this Security Instrument

15. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

16. **Borrower' Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower' obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration or default under paragraph 15.

17. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects annual payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 12 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law

18. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with the Environmental Law.

As used in this paragraph 18, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 18, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection

(page 4)     Initials: <em>[signatures]</em> KRM

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

19. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 15 unless applicable law provides otherwise) The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and expenses.

20. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower Borrower shall pay any recordation costs.

21. **Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" recoverable by Lender from Borrower shall include all attorneys' fees and costs incurred including any attorneys' fees and costs awarded by an appellate court.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument.

Signed, sealed and delivered in the presence of:

BORROWER:

_____ (Seal)
MICHAEL E. McINERNEY

WITNESS  Anthony J. Bologna

WITNESS  Darius W. Dynkowski

_____ (Seal)
KIMBERLY K. McINERNEY

WITNESS  Anthony J. Bologna

WITNESS  Darius W. Dynkowski

STATE OF MICHIGAN
COUNTY OF **OAKLAND**

The foregoing instrument was acknowledged before me this _11th_ day of January, 2010, by **MICHAEL E. McINERNEY**, who is personally known to me or who has produced his _driver's license_ as identification

Notary Public **Nancy Taylor**
**Macomb County, Michigan**
**Acting in Oakland County, Michigan**
**My Commission Expires: 12/20/2014**

(page 5)        Initials: _____ KKM

STATE OF MICHIGAN
COUNTY OF OAKLAND

The foregoing instrument was acknowledged before me this *11th* day of January, 2010, by **KIMBERLY R. McINERNEY**, who is personally known to me or who has produced ~~his~~ *her* *drivers license* as identification

*Nancy Taylor*

Notary Public **Nancy Taylor**
**Macomb County, Michigan**
**Acting in Oakland County, Michigan**
**My Commission Expires: 12/20/2014**

(page 6)        Initials: KRM