UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 11-58953

MICHAEL E. McINERNEY, *pro se*,                     Chapter 11

        Debtor.                              Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE BECKER
MOTION FOR SANCTIONS AGAINST DEBTOR**

**I. Introduction**

      This opinion concerns what the Court finds to be a Chapter 11 debtor's willful failure to provide important discovery to the United States Trustee and to a large creditor, before an evidentiary hearing on confirmation of the Debtor's proposed plan. The creditor filed a motion seeking significant and dispositive sanctions. For the reasons stated in this opinion, the Court will grant sanctions that are more limited than those requested.

**II. Background**

      The Debtor in this Chapter 11 case, Michael E. McInerney, has proposed a plan and seeks confirmation. The United States Trustee and other parties in interest object to confirmation, and a major creditor, Charles E. Becker, Trustee,[1] also seeks to convert this case to Chapter 7. After holding two confirmation hearings, on March 21, 2012 and May 2, 2012, the Court entered an Order on May 3, 2012[2] scheduling an evidentiary hearing, to be held on June 26, 2012. The subjects of the evidentiary hearing were to be: (1) confirmation of the Debtor's proposed plan,

---

    [1] The full name of this creditor is Charles E. Becker, Trustee under Trust Agreement of Charles E. Becker Dated September 16, 1977 as Amended ("Becker").

    [2] Docket # 215.

entitled "Debtor's First Amended Combined Plan of Reorganization and Disclosure Statement" (the "First Amended Plan" (Docket # 155)); and (2) the motion to convert this case to Chapter 7 filed by Becker (Docket # 173, the "Becker Conversion Motion").

The Court's May 3, 2012 Order granted leave to both the Debtor and to Becker to conduct discovery, with such discovery to be completed by June 18, 2012. The Order also required the Debtor and Becker to deliver to each other, no later than June 21, 2012, "a witness list, an exhibit list, and a copy of all marked exhibits that the party may use at the evidentiary hearing."

On June 19, 2012, one week before the June 26 evidentiary hearing was scheduled to begin, Becker filed a motion seeking sanctions against Debtor, for Debtor's alleged failure to provide required discovery (the "Becker Sanctions Motion").[3] The motion seeks an order granting the following relief: (1) an order prohibiting Debtor from introducing any evidence at the June 26 evidentiary hearing "regarding Debtor's business 'prospects' or future sources of income that have not previously been provided to Becker's counsel;" (2) an order granting Becker's pending motion to convert this case to Chapter 7; and (3) an order requiring Debtor to pay Becker's counsel the reasonable fees and costs associated with bringing the motion.[4]

The Court scheduled an expedited hearing on the Becker Sanctions Motion, to occur on June 26, 2012 before the beginning of the evidentiary hearing. The Debtor filed a written

---

[3] Motion to Sanction Debtor by Prohibiting the Introduction of Additional Evidence, filed June 19, 2012 (Docket # 273).

[4] *See id.* at 10, and the proposed Order attached to the motion.

2

response opposing the motion, twenty-five minutes before the expedited hearing began.[5] Debtor and Becker presented oral arguments at the June 26 hearing, and the Court then ordered Becker to file certain documents as supplements to its motion, which Becker did later that day. The Court then took the Becker Sanctions Motion under advisement. The Court adjourned the evidentiary hearing to July 24, 2012.

The Debtor is an attorney, but he is neither a litigation attorney nor a bankruptcy attorney. From the beginning of this bankruptcy case, which was filed on July 12, 2011, the Debtor was represented by Michael Zousmer, an attorney experienced in Chapter 11 bankruptcy cases. But on May 24, 2012, just over three weeks after the May 2 confirmation hearing, and in the middle of the discovery period that was to end on June 18, 2012, attorney Zousmer filed a motion seeking leave to withdraw as Debtor's counsel.[6] The motion stated, without further detail, that there had been "a breakdown in the attorney-client relationship," and that Zousmer and his firm were "no longer able to represent Debtor."[7] After no one timely objected to Zousmer's motion, the Court granted Zousmer leave to withdraw, in an Order filed on June 15, 2012.[8] Under the terms of that Order, Zousmer's withdrawal became effective on June 18, 2012, when Zousmer filed a certificate of service regarding the Order.[9]

So beginning officially on June 18, 2012, and as a practical matter beginning sometime

---

[5] Docket # 293.

[6] Docket # 236.

[7] *Id.* at ¶ 5.

[8] Docket # 258.

[9] Docket # 259.

before that date, the Debtor has been without counsel in this case. At least through the date of this opinion, Debtor has chosen to represent himself in this case, rather than seeking to obtain new counsel.

During the pre-evidentiary hearing discovery period (May 2, 2012 through June 18, 2012), the Debtor was deposed, in a Fed.R.Bankr.P. 2004 examination initiated by the United States Trustee. The Court ordered this examination in a stipulated order filed on June 13, 2012.[10] This examination occurred on June 18, 2012, the last day of the discovery period. Debtor was not represented by counsel during this examination.

Becker attended and participated in the June 18, 2012 examination of Debtor. On June 14, 2012, on motion by Becker, the Court had entered an order allowing Becker to actively participate in the examination, including the right to "question Debtor . . . regarding any and all of his alleged business 'prospects,' 'investments,' and/or future sources of income."[11] In addition, Becker had previously conducted a Rule 2004 examination of the Debtor, on March 5, 2012.

**III. Debtor's failure to provide required discovery**

As discussed in detail below, it is clear from the record, and the Court finds, that the Debtor has not fully cooperated in discovery, and has improperly failed to disclose information regarding the Debtor's current and future prospects and sources for income.

This is a very important subject in this case. Debtor's Chapter 11 plan, the First Amended Plan, requires Debtor to make substantial future monthly payments to a number of

---

[10] Docket # 246.

[11] Docket # 254.

creditors, and the total amount of these monthly payments appears to substantially exceed the income and financial ability Debtor has had during the pendency of this case, as shown by Debtor's monthly operating reports filed to date.

In order to confirm his proposed Chapter 11 plan, Debtor must prove that he will have the ability to make all of the payments required by the plan. *See generally* 11 U.S.C. § 1129(a)(11) (sometimes referred to as the "feasibility" requirement for confirmation of a Chapter 11 plan).[12] This is a hotly contested issue, and the parties and the Court discussed this issue at length during the May 2, 2012 confirmation hearing.[13] Becker and the United States Trustee object to confirmation and contend, among other things, that Debtor does not have, and is not likely to have, the ability to make all of the payments required under Debtor's First Amended Plan.

Debtor's failure to properly disclose information regarding his current and future

---

[12] Section 1129(a)(11) requires, for confirmation of a Chapter 11 plan, that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).

[13] See, for example, the series of questions asked by the Court of Debtor's counsel, Mr. Zousmer, and Mr. Zousmer's answers, during the May 2, 2012 confirmation hearing, (Tr. at 85-94 (Docket # 260)). As part of his argument, Mr. Zousmer stated that "Mr. McInerney says that he has reason to believe that his income will increase, and he's happy to testify as to that." (*Id.* at 93). The Court then asked Mr. Zousmer this question: "[W]hat is the basis for Mr. McInerney's belief that his income will increase in the future?" Zousmer's response was:

> Additional prospects for consulting employment, your Honor. Mr. McInerney has started this consulting stuff in the relative near past and has been quite successful with it and through his contacts and through various entities with whom he is in discussions believes that his income will significantly increase in the very near future.

(*Id.* at 93-94).

prospects for and sources of income includes the following:

- During his March 5, 2012 deposition/Rule 2004 examination, Debtor refused to fully answer, on the record, questions from Becker's counsel about who he was then doing consulting services for.[14]

- During the June 18, 2012 deposition/Rule 2004 examination, Debtor admitted the following:

    > Q. Are you aware that you've provided no evidence that you have any ongoing prospect for future income from consulting?
    > A. So far.
    > Q. Do you plan to provide those at the confirmation hearing?
    > A. Yes.[15]

- During the June 18, 2012 deposition/Rule 2004 examination, Debtor refused to provide any information about possible future sources of consulting income that he was working on, other than the Archdiocese of Detroit. Debtor testified as follows, in response to questions by counsel for the United States Trustee:

    > Q. My next question. As we sit here today you don't know where your income will come otherwise then from the Archdiocese for next month?
    >
    > A. Not prepared to discuss it is really my answer. I'm working on some things and they're not finalized and I'm really not prepared to, I'm not comfortable discussing that without counsel because it obviously relates to the subject matter with the hearing.[16]
    >
    > . . .
    >
    > Q. Let me just be clear. So other than you saying you're not comfortable giving me that information without having counsel you're not going to answer

---

[14] March 5, 2012 Tr. (Docket # 212) at 7-8.

[15] June 18, 2012 Tr. (Docket # 276) at 76-77.

[16] *Id.* at 60-61.

6

the question beyond what you just said?

A. That's correct.

Q. Okay. I'm not going to beat a dead horse. All right.

I'm going to have the same questions for how about August 2012, what's your anticipated source of income coming up in August?

A. My answer would be the same answer.[17]

. . .

Q. So I'm not beating a dead horse and taking up time, would your answer be the same for the foreseeable September, October, November, December to the end of this year?

A. Yes.

Q. Okay. How about starting in 2013? So starting next year, any idea where is your source of income coming from? Archdiocese?

A. The same answer.[18]

. . .

Q. As we sit here, do you have proof or guarantee that your income is going to continue beyond what it is right now for any length of time in the future?

A. The answer to that is the same answer I already provided.

Q. Going back, I'm paraphrasing, but essentially you're uncomfortable taking about it without having

---

[17] *Id.* at 62.

[18] *Id.* at 63.

7

> an attorney?
>
> A. Correct.
>
> Q. And other than we've also discussed the Archdiocese?
>
> A. Correct. And I'm working on some things but nothing finalized.
>
> Q. But you got no proof of that to provide to me today as we sit here?
>
> A. That's correct.[19]

- At this point during the June 18 examination, Becker's counsel began his questioning of Debtor by having Debtor read aloud the part of the Court's June 14, 2012 Order allowing Becker's counsel to "question Debtor . . . regarding any and all of his alleged business 'prospects,' 'investments,' and/or future sources of income."[20] But despite this reminder, Debtor then repeatedly refused to answer questions by Becker's counsel about this subject. The transcript is quoted at length to give the full flavor of Debtor's stubborn refusal to answer numerous perfectly appropriate questions:

  > Q. The earnings then is that primarily then from consulting work?
  >
  > A. Consulting or employment.
  >
  > Q. Do you have any employment prospects at this time?
  >
  > A. Not that I'm prepared to discuss for the same reasons that I indicated to [counsel of the United States Trustee].
  >
  > Q. Do you believe you have a valid objection to answering these questions?
  >
  > A. I gave you my answer.

---

[19] *Id.* at 66.

[20] Order (Docket # 254); June 18, 2012 Tr. (Docket # 276) at 67.

8

Q. Are you an attorney licensed to practice in the State of Michigan?

A. Yes.

Q. Okay. And you don't believe you have any valid objections, then?

A. I don't know about objections. I've given you my answer.

Q. Your answer is you refused to testify without an attorney present?

A. That's what my answer was.[21]

. . .

Q. I'm going to ask you some questions here. I expect that you're going to tell me that you don't want to answer them and that's fine. I want to make a record of them.

Q. Do you have any prospects for independent consulting work?

A. Same answer as before.

Q. How many prospects do you have for independent consulting work?

A. Same answer as before.

Q. What is the likelihood that any of these come to fruition and you're able to continue doing contract work?

A. Very good.

Q. Do you intend to retain counsel in this matter?

---

[21] June 18, 2012 Tr. (Docket # 276) at 71-72.

A. Not sure.

Q. So you won't answer these questions without retaining counsel and you're not sure if you're going to retain counsel?

A. First of all, that's not what I said as far as answering the questions, and second of all, no, I'm not sure as I just said about retaining counsel.

Q. Under what circumstances would you be ready to answer these questions regarding your future prospects for consulting work?

A. Finalizing one of the things that I'm working on that I alluded to repeatedly and possibly retaining counsel, and possibly not.

Q. So none of them are finalized?

A. That's what I've said a couple of times.

Q. And if they're finalized you still may not be willing to testify about it without counsel?

A. Not going to speculate about that.

Q. Well, you're not answering the questions –

A. Evidentiary hearing I'm going to have to.

Q. You're in a deposition right now and you're still refusing to, so that doesn't mean a lot to me. Are you aware that you're in a Chapter 11 Bankruptcy right now?

A. Yes.

Q. Are you aware that you have a duty in the order to make your plan confirmable to prove that you have sources of income that can sustain that plan?

A. Sure.

10

Q. Okay. Are you aware that you've provided no evidence that you have any ongoing prospect for future income from consulting?

A. So far.

Q. Do you plan to provide those at the confirmation hearing?

A. Yes.

Q. Do you plan to exchange exhibits prior to that?

A. I plan to comply with the court's order.

Q. That's this Thursday. Do you plan to have that finalized by Thursday to exchange those contracts?

A. I plan to comply with the court's order.

Q. Are they going to be ready by this Thursday?

A. Whatever I have by Thursday I will provide.

Q. And if it's not provided by Thursday are you going to try to introduce it at the confirmation hearing?

A. If it's finalized after then, yes.

Q. Are you going to make that person available for deposition?

A. I'm not going to do anything to that person.

Q. The person that's going to give you as you said very likely a source of continuing income are they going to be present at the confirmation hearing to answer questions?

A. I have no idea.

Q. Are you going to ask them to be present at the

confirmation hearing?

A. I have no idea.

Q. You don't know whether or not you're going to ask a witness to come to the confirmation hearing that's next week?

A. I don't know.

Q. Why do you not know?

A. Because I don't know.

Q. Well, you don't know because you haven't confirmed the deal yet? You don't know because it's not part of your strategy?

A. I don't know.

Q. When do you expect to have this deal wrapped up?

A. I've already answered that.

Q. No, you haven't. When do expect to have the deal wrapped up?

A. Prior to the confirmation hearing.[22]

. . .

Q. What is the name of the person you're negotiating with right now for any future employment contracts or future consulting contracts?

A. Same answer.

Q. What is their phone number?

---

[22] *Id.* at 75-78.

A. Same answer.

Q. What is their address?

A. Same answer.

Q. What city are they located?

A. Same answer.

Q. What type of work would you be doing for them?

A. Same answer.

Q. Have payment terms been discussed?

A. Same answer.

Q. What are the payment terms?

A. Same answer.

Q. Has this agreement been memorialized in writing in anyway?

A. No.

Q. How long have you been in contact with said person negotiating this?

A. On and off for several months.

Q. And if the contract is finalized and signed and you go to work when would you begin work?

A. Remains to be determined, that's part of what's not finalized.

Q. Are there more than one person you're currently in negotiations with?

A. Yes.

13

> Q. How many are there?
>
> A. Same answer as before.
>
> Q. Are there more than ten people you're in negotiations with?
>
> A. Same answer.
>
> Q. More than twenty?
>
> A. Same answer as before.
>
> Q. Less than five?
>
> A. Same answer as before.[23]

- Debtor failed to serve any witness list or exhibit list, or any exhibits, on Becker's counsel or counsel for the United States Trustee, by the June 18, 2012 deadline set by the Court's May 3, 2012 Order.

- In his June 26, 2012 written response to the Becker Sanctions Motion, and during the June 26, 2012 hearing on Becker's motion, Debtor revealed, for the first time, that he had just signed a letter agreement with Endura Coatings, LLC of Sterling Heights, Michigan ("Endura Coatings"). Under that one-page agreement, dated June 25, 2012, Endura Coatings and Debtor agree that Debtor will provide certain consulting services for a minimum of two years, at a compensation rate of $20,000 per month.[24]

- During the June 26 hearing, Debtor stated that this consulting agreement with Endura Coatings had been an open offer to him for several months. Yet Debtor did not reveal this prospect or anything about it during his Rule 2004 examinations on March 5, 2012 or June 18, 2012. This is particularly outrageous with respect to Debtor's refusal and failure to reveal anything about the prospective deal with Endura Coatings during the June 18, 2012 examination. The Court specifically ordered, in the June 14, 2012 order, that during the June 18 examination Becker could "question Debtor . . . regarding any and all of his alleged business 'prospects,' 'investments,' and/or future

---

[23] *Id.* at 80-81.

[24] A copy of this document is attached as Exhibit A to Debtor's written response filed on June 26, 2012 (Docket # 293).

14

sources of income."²⁵ And as noted above, Becker's counsel specifically reminded Debtor of this Order during the June 18 examination.

Debtor's claimed excuse for the above failings is, in essence, that until he made his agreement with Endura Coatings on June 25 — seven days after the discovery period ended on June 18 and the day before the evidentiary hearing was scheduled to begin — anything Debtor might say about his future income prospects would have been speculative. Even if this is true, however, under the circumstances, this is not a valid excuse for Debtor's refusals and failures to answer the questions he was asked and to provide information. Instead, Debtor should have testified fully and openly about all of the possible prospects he was considering and pursuing, and to the extent they were still speculative or unsettled, Debtor could have made that clear in his testimony. *Indeed, the fact that all of Debtor's future income prospects were still merely speculative, as late as June 18, 2012, is itself significant*, with respect to the feasibility of Debtor's First Amended Plan, and with respect to the issue of whether Debtor proposed his First Amended Plan in good faith, as required by 11 U.S.C. § 1129(a)(3).²⁶

Under the circumstances, the Court finds that the Debtor failed to fully comply with the orders requiring him to appear for and testify at the March 5, 2012 and June 18, 2012 Rule 2004 examinations;²⁷ that Debtor failed to comply with the Court's May 3, 2012 Order²⁸ by failing to

---

²⁵ Docket # 254.

²⁶ Debtor filed his First Amended Plan on February 7, 2012 (Docket # 155). The first hearing on confirmation of that plan was March 21, 2012.

²⁷ Docket ## 110, 246, 254.

²⁸ Docket # 215. In this regard, Debtor stated at the June 26 hearing that as of the June 18 deadline, he did not have any exhibits to present and his only witness would be himself. (The consulting agreement between Debtor and Endura Coatings, according to Debtor, was not signed until June 25, 2012.) There are at least two problems with Debtor's arguments here. First, Debtor was required to

15

serve on Becker and the United States Trustee, by the June 18, 2012 deadline, a witness list, exhibit list, and copies of exhibits for the evidentiary hearing; and that the Debtor has failed to comply with his discovery obligations under Fed.R.Civ.P. 30(c)(2) and 26(b)(1) with respect to the June 18, 2012 deposition/examination.[29]

As a result, the Court has authority to sanction the Debtor, under the Court's inherent power to enforce its orders; under 11 U.S.C. § 105(a); and under Fed.R.Civ.P. 37, which applies in this case under Fed.R.Bankr.P. 9014(c) and 7037. *See, e.g., In re Mehlhose*, 469 B.R. 694, 709-11 (Bankr. E.D. Mich. 2012); *Holley v. Kresch Oliver, PLLC* (*In re Holley*), 2012 WL 2777735 (Bankr. E.D. Mich., June 1, 2012) at *1-*3; *Shapiro v. Plante & Moran, LLP (In re Connolly North America, LLC*), 376 B.R. 161, 181-83 (Bankr. E.D. Mich. 2007); *see also John Richards Homes Bldg. Co., L.L.C. v. Adell* (*In re John Richards Homes Bldg. Co., L.L.C.*), 404 B.R. 220, 227 (E.D. Mich. 2009)(citation omitted)("[i]n addition to the inherent authority to issue sanctions as explained in *Chambers* [*v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)], 11 U.S.C. § 105(a) grants to federal bankruptcy courts the authority to issue sanctions" and "bankruptcy courts have both an inherent and a statutory power to issue sanctions . . . [which] can be applied

---

serve a witness list, listing himself as a witness, by the June 18, 2012 deadline, and he did not do so. Second, Debtor has not given any persuasive reason why the Endura Coatings agreement could not have been finalized and signed in time for Debtor to be able to include it in an exhibit list, and give a copy of it to Becker and the United States Trustee, by the June 18, 2012 deadline. As noted above, for example, the Debtor admitted during the June 26 hearing that the offer from Endura Coatings had been open to Debtor for several months.

[29] While the Debtor's June 18, 2012 examination was ordered under Fed.R.Bankr.P. 2004, it was also a deposition subject to the federal civil rules on discovery. Among these are Fed.R.Civ.P. 30(c)(2) and 26(b)(1), made applicable by Fed.R.Bankr.P. 7026 and 7030, via Fed.R.Bankr.P. 9014(c). Civil Rule 30(c)(2) requires the witness in a deposition to answer all questions (at least all questions not seeking privileged information; and no privilege is claimed here), even those subject to an objection. Civil Rule 26(b)(1) defines the scope of permissible discovery very broadly, to be "any nonprivileged matter that is relevant to any party's claim or defense . . .."

to all instances of 'conduct which abuses the judicial process,'").

## IV. Appropriate relief

The question now becomes what sanctions are appropriate. Becker seeks relief that would be dispositive of Debtor's effort to confirm his plan and avoid conversion to Chapter 7. Becker seeks an exclusion of evidence that Debtor must present to confirm his plan, and also conversion of this case to Chapter 7, in addition to an order requiring Debtor to pay Becker's fees and costs incurred in bringing the Becker Sanctions Motion.

In deciding whether to grant dispositive relief as a discovery sanction, the Court considers all the relevant circumstances, including the following factors:

> (1) whether the party's failure to comply with the discovery rules is due to willfulness, bad faith, or fault;
>
> (2) whether the adversary was prejudiced by the party's noncompliance;
>
> (3) whether the party was warned that failure to comply could lead to [dispositive relief such as dismissal]; and
>
> (4) whether less drastic sanctions were imposed or considered before [dispositive relief such as dismissal] was ordered.

*See Shapiro v. Plante & Moran*, 376 B.R. at 182, (quoting *Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995)(citing *Bank One of Cleveland*, *N.A.*, *v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990)). As this Court noted in *Shapiro v. Plante & Moran*, 376 B.R. at 182-83:

> These are not all requirements that must be met, but rather are factors to be considered. "[N]o one factor is dispositive," *see United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002), except that as noted above, Sixth Circuit cases hold that the sanction of dismissal may not be used in the absence of the first factor — "willfulness, bad faith, or fault."

Considering these factors, the Court finds first that Debtor's failures were "willful." As

17

this Court noted in *Shapiro v. Plante & Moran*, 376 B.R. at 183,

> In *Bass v. Jostens*, *Inc.*, 71 F.3d 237, 241 (6th Cir. 1995), the Sixth Circuit held that "a willful violation . . . is any conscious or intentional failure to comply." (citing *Brookdale Mill v. Rowley*, 218 F.2d 728, 729 (6th Cir. 1954).

Debtor's failures here clearly were conscious and intentional.

Second, Becker clearly was prejudiced by Debtor's failures here, as was the United States Trustee. The Court had to delay, and then adjourn to a later date, the evidentiary hearing scheduled for June 26. Had the evidentiary hearing gone forward on June 26 as scheduled, and had the Debtor been permitted to testify about his new consulting agreement with Endura Coatings, Becker would have been surprised and unprepared to react to such evidence, since it had not had any opportunity to investigate that evidence, and had not obtained any discovery about it.

But that form of prejudice to Becker can now be completely prevented, by the Court now giving Becker the opportunity to obtain full discovery about the Endura Coatings agreement, and about any other prospects for future income that Debtor may have, including a further deposition of Debtor (in which Debtor will be required to answer all questions,) and including discovery from Endura Coatings. As discussed below, this is what the Court will do.

Becker has suffered another form of prejudice, in the form of the reasonable attorney fees and expenses Becker has incurred because of Debtor's failings. The Court can remedy this form of prejudice, however, by requiring Debtor to pay Becker for all such fees and expenses, before the Court will even consider confirming Debtor's First Amended Plan. The Court will impose this remedy.

18

Becker has not suffered, and will not suffer, any other form of prejudice because of Debtor's failings.

The third factor above, *i.e.*, whether the Court gave Debtor any prior warning that failure to comply with the Rule 2004 examination orders, the Court's May 3, 2012 Order, and Civil Rules 26 and 30, could lead to the non-monetary sanctions Becker seeks (exclusion of witnesses; conversion of the case to Chapter 7,) is not present in this case. Becker has not identified any such specific warning, and the Court does not recall any.

The fourth factor above is whether this Court has imposed or considered sanctions less drastic than the non-monetary sanctions Becker seeks. The Court has not previously imposed any sanctions on the Debtor in this case. The Court does consider, now, the possibility of imposing less drastic sanctions on Debtor. In so doing, the Court concludes that it should indeed impose sanctions less drastic than what Becker seeks, although it is a very close call. Rather than converting this case to Chapter 7 now; and rather than precluding Debtor from introducing evidence at the evidentiary hearing regarding confirmation, which could be fatal to Debtor's chances of confirming his plan and avoiding conversion to Chapter 7, the Court will instead impose less drastic relief at this time. Such relief will, in the Court's view, prevent and remedy any prejudice to Becker, while giving the Debtor another chance to fully comply with his discovery and disclosure obligations. In doing so, the Court is going out of its way to give Becker a full opportunity to try to prove his case for confirmation of the First Amended Plan.

Considering all of these factors, and under all the circumstances presented here, including the fact that Debtor had lost his attorney in this case shortly before the June 18, 2012 examination, the Court will enter an order denying the Becker Sanctions Motion to the extent it

seeks any sanctions or relief other than the following monetary sanctions. While the Court is exercising its discretion in a more lenient manner than Becker seeks, the Court repeats that this decision has been a very close call.

By a date certain to be set later, but which will occur before the Court holds the evidentiary hearing on confirmation, Debtor will be required to pay Becker the full amount of the reasonable attorney fees and expenses incurred by Becker in preparing and prosecuting the Becker Sanctions Motion. The amount of such fees and expenses will be determined under procedures to be described in the Court's order.

In addition, the Court's order will grant Becker and the United States Trustee leave to conduct further discovery, as described in this opinion above.

## V. A word of warning to the Debtor

The Court now cautions Debtor that if he fails to fully cooperate in discovery at any time after the date of this opinion, or if he fails to serve a witness list, exhibit list, or exhibit copies by the new deadline being set by the Court, or if he refuses to answer any question in any further deposition or Rule 2004 examination, the Court may order more drastic sanctions against Debtor, including denial of confirmation of Debtor's Chapter 11 plan; conversion of this case to Chapter 7; and/or further monetary sanctions.

## VI. Conclusion

For the reasons stated in this opinion, the Court will enter a separate order granting the Becker Sanctions Motion in part, in the form of the relief described above.

**Signed on July 20, 2012**                     **/s/ Thomas J. Tucker**
                                                **Thomas J. Tucker**
                                                **United States Bankruptcy Judge**