UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 11-58953

MICHAEL E. McINERNEY,                               Chapter 7

        Debtor.                                 Judge Thomas J. Tucker
_____/

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
*SECOND* MOTION FOR APPROVAL OF SETTLEMENT**

**I. Introduction**

      This case is before the Court on the Chapter 7 Trustee's motion entitled "Chapter 7 Trustee's Second Motion Pursuant to Fed. R. Bankr. P. 9019 to Authorize and Approve Settlement Agreement By and Between Chapter 7 Trustee and Charles E. Becker, Charles E. Becker as Trustee under Trust Agreement of Charles E. Becker Dated September 16, 1997, as Amended, and Becker Ventures, LLC."[1] The Motion seeks to compromise, for $1 million, claims that Debtor asserted against Charles E. Becker and Becker Ventures, LLC in a lawsuit Debtor filed prepetition, seeking in excess of $9 million in damages. The Debtor and certain creditors object to the Motion. The objecting creditors are Alan Ackerman; Ackerman Ackerman & Dynkowski; Mark W. McInerney (the Debtor's brother); James Dales; Stephen Wheeler; and Bush Seyferth & Paige, PLLC.

      The Court held a hearing on the Motion, and then took it under advisement. For the reasons stated in this opinion, the Court will grant the Motion.

**II. Discussion**

      The present Motion seeks approval of a settlement that, except for the amount, is the

---

[1] Docket # 557 (the "Motion").

same as a settlement that the Court previously refused to approve, in the Court's opinion and order filed on October 17, 2013.[2] The Court's opinion is reported at 499 B.R. 574.

The amount of the settlement that the Court disapproved was $250,000.00. The current proposed settlement amount, by contrast, is $1 million.

In its prior opinion, the Court concluded, after a lengthy discussion, that the proposed $250,000.00 settlement was "not fair and equitable, [was] unreasonably low, [was] not in the best interests of creditors and the estate, and should not be approved." 499 B.R. at 598-99. The question now before the Court, in effect, is whether the same things are true of the current proposed settlement. Or are things different this time?

The Court concludes that things are indeed materially different this time, and that the current proposed settlement meets the standards for approval, and should be approved.

To begin with, the Court incorporates by reference, and adopts as part of this opinion, everything the Court stated in its earlier opinion in the following parts of that opinion, all of which, the Court concludes, apply to the present (second) settlement Motion as well: Parts I (Background);[3] II (Jurisdiction);[4] III.A (Discussion: Standards for approval or disapproval of a settlement agreement);[5] and III.C.1.a (probability of success in the pending state court appeals).[6] And except to the extent that it is inconsistent with what the Court says in this opinion, below,

---

[2] Docket ## 545, 546.

[3] 499 B.R. at 576-580.

[4] *Id.* at 580-81.

[5] *Id.* at 581-83.

[6] *Id.* at 584-594.

the Court also incorporates by reference, and adopts as part of this opinion, what it said in Part III.C.1.b (probability of success at a trial in the state court on remand, after likely success on appeal, including probability of Debtor persuading the fact finder that the alleged 15% Oral Agreement actually existed).[7]

Next, the Court adopts and incorporates by reference into this opinion what it said in Part III.C.2 of its earlier opinion (the amount of damages and the collectibility factor),[8] and supplements that with the following. The Trustee on the one hand, and the Debtor and objecting creditors on the other hand, continue to dispute how much in damages can be proven at any state court trial of the claim against Becker. In his Motion and at the hearing on the second settlement Motion, the Trustee argued that the provable damages would be $5.324 million, at most. The Debtor, on the other hand, argued at the hearing that the provable damages would be as high as $14.393 million. It is not necessary for the Court to decide who is right about this, however, because even if the Court assumes that the Debtor is right, the Court would still approve the presently-proposed settlement.

Next, the Court concludes that the following things are materially different at this time, and with respect to the current proposed settlement, compared to at the time of the Court's earlier opinion disapproving the earlier, $250,000.00 settlement:

1. The $1 million settlement amount proposed now is quadruple the amount proposed before, and is obviously a very substantial "bird in the hand"[9] for the bankruptcy estate, if the

---

[7] *Id.* at 594-96.

[8] *Id.* at 596-97.

[9] This, of course, is a reference to the saying that "a bird in the hand is worth two in the bush."

settlement is approved. And the $1 million amount, if approved, would result in the payment in full of Chapter 7 and Chapter 11 administrative expenses, priority claims, and a substantial distribution to non-priority, unsecured creditors other than Becker (who has agreed as part of the settlement to subordinate his claim against the estate in favor of the other unsecured creditors).

2. At this time, the Court finds that the Debtor is unlikely to be a credible witness in any trial of the claim against Becker. The Debtor is unlikely to be believed by the state court fact-finder on his claim, which is based entirely on the alleged 15% *Oral* Agreement that Debtor says he made with Becker, but which Becker denies. This greatly diminishes the likelihood that the claim against Becker would prevail at trial, if the proposed settlement of that claim is not approved.

The Court bases its assessment of Debtor's credibility on the following. Several months after this Court issued its October 17, 2013 opinion denying approval of the earlier proposed settlement, the Court entered judgment, in two related adversary proceedings, denying the Debtor's discharge under 11 U.S.C. § 727(a)(4)(A). Those judgments were entered after the Court made written factual findings that the Debtor was not a credible witness; that he intentionally had been dishonest; that he had made several false oaths, with fraudulent intent, in connection with this bankruptcy case; and that he lied in his testimony at trial of the adversary proceedings.

The Court made these findings after conducting a bench trial on December 3 and 17, 2013, in two consolidated adversary proceedings brought by the Chapter 7 Trustee and the
4

Becker parties, objecting to the Debtor's discharge.[10] In the Court's written Trial Opinion, filed April 11, 2014,[11] which is reported at 509 B.R. 109, the Court found that "the Debtor [made] several false statements material to his bankruptcy case under oath, both knowingly and with fraudulent intent." 509 B.R. at 117. The Court's Trial Opinion discussed those false statements in detail, and the Court incorporates that discussion into this opinion, by reference. *See id.* at 117-123. And the Court found that the Debtor had testified falsely under oath in several ways during the trial. *See id.* at 119 ("Debtor's testimony at trial [regarding a particular point] was simply false."); 120 (finding that the Debtor's explanation of another point, in his trial testimony, was "false"); 121 ("And Debtor made another false oath under § 727(a)(4)(A), in his testimony at trial, when he knowingly gave a false explanation of his failure to list this property in his initial Schedule B.")

One of the creditors objecting to the Trustee's second settlement motion, the law firm Bush Seyferth & Paige, PLLC, represented the Debtor for a time in his state court litigation against Becker. But that objecting creditor, in the past, has accused the Debtor of fraud and dishonesty, and even obtained a consent judgment against the Debtor in which the Debtor admitted to having committed fraud. The Court described this in detail in its Trial Opinion in the adversary proceedings, 509 B.R. at 122-23:

> The Court notes that although it would make the same

---

[10] *Becker, et al. v. McInerney*, Adv. No. 12-5386; *Kohut, Trustee v. McInerney*, Adv. No. 13-4342.

[11] The same Trial Opinion was filed at Docket # 82 in Adv. No. 13-4342, and at Docket # 65 in Adv. No. 12-5386. The Judgments in these adversary proceedings were filed on April 11, 2014, at Docket # 83 in Adv. No. 13-4342, and at Docket # 66 in Adv. No. 12-5386. There was no appeal taken from either judgment.

5

> findings and conclusions that it has made in this opinion, above, without the following, the following evidence seriously damaged Debtor's credibility during the trial of these cases. And the following further supports the Court's findings and conclusions above.
>
> Before Debtor filed this bankruptcy case, he was sued in the Oakland County Circuit Court by the law firm Bush Seyferth & Paige, for fraud. Debtor consented to a judgment for $300,000 in favor of the Bush Seyferth firm, and a consent judgment was entered on or about May 23, 2011. In connection with that consent judgment, Debtor signed a settlement agreement with the Bush Seyferth firm dated April 26, 2011, in which the Debtor specifically admitted "that he committed fraud in the manner alleged by [Bush Seyferth in its complaint]" and specifically admitted "the truth of the allegations set forth in paragraphs 35 through 67 [of the Bush Seyferth complaint]." Thus, Debtor admitted in writing the following allegations: that the Debtor induced Bush Seyferth to agree to represent him, and to continue representing him, in Debtor's litigation against the Becker Parties, by knowingly making false representations to Bush Seyferth that Debtor had set aside funds to pay Bush Seyferth for the litigation, but Debtor knew these statements were false when he made them. Debtor further admitted, as the complaint alleges, that Debtor induced Bush Seyferth to represent him in the Becker litigation by promising to pay their fees, estimated to be in the range of $300,000 to $500,000 or more, but Debtor did not intend to keep that promise when he made it.

(footnotes omitted).

The Court recognizes that in a trial of the claim against Becker in the Michigan Circuit Court, *this* Court's written findings of the Debtor's dishonesty and lack of credibility might not be admissible in evidence. Under Rule 608 of the Michigan Rules of Evidence, Becker could attack Debtor's credibility as a witness with opinion testimony, and testimony about Debtor's reputation, as to his character for untruthfulness. And, if allowed in the trial court's discretion, Becker could cross-examine Debtor about specific instances of dishonesty to try to show
6

Debtor's character for untruthfulness. But such specific instances of dishonesty, such as those found by this Court, could not be proved by extrinsic evidence. *See* Mich.R.Evid. 608(a) and 608(b).[12] For this reason, and possibly other reasons, at a trial in state court, Becker probably could not attack Debtor's credibility as a witness with evidence of this Court's findings regarding the Debtor's specific acts of dishonesty. If, on cross-examination by Becker in the state court, Debtor denied having committed the specific acts of dishonesty found by this Court, it may be that such denial could not be challenged by any extrinsic evidence. *See, e.g.*, 2 Hon. Barry Russell, *Bankruptcy Evidence Manual*, § 608.4, at 734 (West 2013-2014 ed.)(discussing Fed.R.Evid. 608(b) in this context as meaning that "[t]he cross-examiner thus must take the

---

[12] Mich.R.Evid. 608 states:

> **RULE 608. EVIDENCE OF CHARACTER AND CONDUCT OF WITNESS**
>
> **(a) Opinion and Reputation Evidence of Character.** The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.
>
> **(b) Specific Instances of Conduct**. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.
>
> The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the accused's or the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

7

answer given by the witness.")

But even if Becker could not use this Court's findings to attack the Debtor's credibility at a trial in state court, it is likely that the state court fact-finder would find the Debtor not credible. This Court's experience with the Debtor, which led to the findings described above, persuades the Court that the Debtor likely would not be viewed as a credible witness in a state court trial of the claim against Becker. The Debtor's testimony about the existence of the alleged 15% Oral Agreement with Charles Becker, therefore, is not likely to be believed.[13]

Obviously, the proposed $1 million settlement is much smaller than the $14.393 million in damages that the Debtor claims are provable on the claim against Becker, and also is considerably smaller than the $5.324 million in damages that the Trustee says is the maximum provable. But there is a substantial risk that if the Court does not approve the $1 million settlement, litigation of the claim against Becker ultimately could fail entirely, leaving the bankruptcy estate with nothing. Under the circumstances, the Court concludes that the proposed settlement is fair and equitable, is not unreasonably low, is in the best interests of creditors and the estate, and should be approved.

**III. Conclusion**

For the reasons stated in this opinion, the Court will enter an order granting the Trustee's second settlement Motion, and approving the $1 million settlement. The Court has revised the proposed order that the Trustee filed with his Motion, and will enter that revised order.

---

[13] On the other side of the coin, objecting creditors, particularly Alan Ackerman and his law firm, argue that Charles Becker will not be a credible witness at a state court trial, and will be less credible than the Debtor. (*See* [Ackerman Objection](Docket # 585) at 3-5.) The Court finds these arguments unpersuasive.

8

**Signed on August 7, 2014**                                   /s/ Thomas J. Tucker
                                                               **Thomas J. Tucker**
                                                               **United States Bankruptcy Judge**