UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 11-58953

MICHAEL E. McINERNEY,                           Chapter 7

          Debtor.                               Judge Thomas J. Tucker
_____ /

**OPINION REGARDING THE CHAPTER 7 TRUSTEE'S
MOTION FOR APPROVAL OF SETTLEMENT
WITH THE ACKERMAN DEFENDANTS**

**I. Introduction**

The dispute now before the Court in this case requires consideration of Michigan law

concerning the amount of a fee to be paid, on the basis of quantum meruit, to an attorney who did

substantial work on a commercial lawsuit on a contingent-fee basis, but who was terminated and

replaced by successor counsel who later settled the case.

This case is before the Court on the Chapter 7 Trustee's motion entitled "Chapter 7

Trustee's Motion Pursuant to Fed. R. Bankr. P. 9019 Authorizing and Approving Settlement

Agreement By and Between Chapter 7 Trustee and Ackerman Defendants"[1]  The Motion seeks to

compromise various claims that the Chapter 7 Trustee has asserted in Adversary Proceeding No.

13-5292, against Alan T. Ackerman; Ackerman & Ackerman, P.C.; and Ackerman and

Ackerman, P.C. Profit Sharing Trust, etc. (the "Ackerman Defendants").  Three creditors holding

non-priority unsecured claims have objected to the Motion.  The objecting creditors are Bush

Seyferth & Paige, PLLC (the "Bush Seyferth firm"); James Dales; and Stephen Wheeler.

The Court held a hearing on the Motion on November 19, 2014, and took it under

---

[1]  Docket # 621 (the "Motion").

advisement.  For the reasons stated in this opinion, the Court will deny the Motion.

## II.  Discussion

The Court previously issued two written opinions in this bankruptcy case regarding other proposed settlements.  The Court will begin by adopting, as part of this opinion, what it stated in its first settlement opinion, regarding subject matter jurisdiction; core vs. non-core proceeding; and standards governing motions to approve a settlement.

### A.  Jurisdiction and core proceeding

As the Court stated in the first settlement opinion,

> This Court has subject matter jurisdiction over the case and this contested matter under 28 U.S.C. §§ 1334(b), 157(a) and (b)(1), and Local Rule 83.50(a) (E.D. Mich.).  A motion to approve a settlement agreement is a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A) and (0).  *See In re High Tech Packaging, Inc.*, 397 B.R. 369, 371 (Bankr. N.D. Ohio 2008); *In re Parkview Hosp.–Osteopathic Med. Ctr.,* 211 B.R. 603, 607 (Bankr. N.D. Ohio 1997); *In re Dow Corning Corp.*, 192 B.R. 415, 421 (Bankr. E.D. Mich. 1996); *In re Frye*, 216 B.R. 166, 170 (Bankr. E.D. Va. 1997).

> This contested matter also is "core" because it falls within the definition of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b).  Matters falling within this category in § 1334(b) are deemed to be core proceedings.  *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009).  This matter is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases."  *Id.*

*In re McInerney*, 499 B.R. 574, 580-81 (Bankr. E.D. Mich. 2013).

### B.  Standards governing settlement motions

As the Court also stated in its first settlement opinion,

> "Settlements and compromises are favored in bankruptcy as they

2

minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate." *HSBC Bank USA, N.A. v. Fane* (*In re MF Global Inc.*), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012) (citing *Myers v. Martin* (*In re Martin*), 91 F.3d 389, 393 (3d Cir. 1996)); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (citation omitted) (Bankruptcy Act) ("Compromises are 'a normal part of the process of reorganization.' In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts."); *In re Dewey & LeBoeuf LLP,* 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012)(citing *MF Global Inc.*, 466 B.R. at 247; *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir.2007)("stating that settlements are important in bankruptcy because they 'help clear a path for the efficient administration of the bankrupt estate'"); and 10 *Collier on Bankruptcy* ¶ 9019.01 at 9019–2 ("highlighting that 'compromises are favored in bankruptcy'")); *Buckeye Check Cashing, Inc. v. Meadows* (*In re Meadows*), 396 B.R. 485, 499 (B.A.P. 6th Cir. 2008) (citing *In re Cormier*, 382 B.R. 377, 400–01 (Bankr. W.D. Mich. 2008))("Settlements in bankruptcy cases are favored by law."); *In re West Pointe Properties, L.P.*, 249 B.R. 273, 282 (Bankr. E.D. Tenn. 2000) (quoting *In re Edwards*, 228 B.R. 552, 568–69 (Bankr. E.D. Pa. 1998))("'[I]t is well accepted that compromises are favored in bankruptcy in order to minimize the cost of litigation to the estate and expedite its administration, and that the approval of a compromise is within the sound discretion of the bankruptcy judge.'").

"At the same time, however, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court." *TMT Trailer*, 390 U.S. at 424 (citation omitted).

In *Olson v. Anderson* (*In re Anderson*), 377 B.R. 865, 870-71 (B.A.P. 6th Cir. 2007), *abrogated on other grounds by Schwab v. Reilly*, 560 U.S. 770 (2010)(footnotes and citations omitted), the court described in detail the "[s]tandard for approval or disapproval of a settlement agreement:"

Rule 9019 of the Federal Rules of Bankruptcy

3

Procedure provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." The rule offers no guidance as to the criteria to be used in evaluating whether a settlement should be approved, but courts uniformly have drawn from the language of the Supreme Court's decision in *TMT Trailer Ferry* in establishing a "fair and equitable" threshold for settlement approval. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968). Although the *TMT Trailer Ferry* case was decided under the Bankruptcy Act, "its principles have been broadly held applicable to settlements under the Bankruptcy Code." 2 *Norton Bankr.L. & Prac.2d* § 41:10 (2007). Many Rule 9019 opinions have relied on *TMT Trailer Ferry* "both for the substantive requirement that settlement represent a fair compromise of disputed issues, and for the requirement that such settlement be preceded by adequate inquiry." *Id.*

The Sixth Circuit Court of Appeals has held that **"the bankruptcy court is charged with an affirmative obligation to** apprise itself of the underlying facts and to **make an independent judgment as to whether the compromise is fair and equitable."** *Reynolds v. Comm'r*, 861 F.2d 469, 473 (6th Cir.1988) (emphasis added). **The court must weigh the conflicting interests of all relevant parties, "considering such factors as the probability of success on the merits, the complexity and expense of litigation, and the reasonable views of creditors."** *Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir.1988) (citation omitted). "A bankruptcy judge need not conduct a mini-trial or write an extensive opinion every time he approves or disapproves a settlement. The judge need only be apprised of the relevant facts and law so that he can make an informed and intelligent decision and set out the reasons for that decision." *Fishell v. Soltow* (*In re Fishell*), 47 F.3d 1168, 1995 WL 66622, at *3 (6th

4

Cir. Feb.16, 1995) (unpublished table decision)
(quoting *LaSalle Nat'l Bank v. Holland* (*In re Am.
Reserve Corp.*), 841 F.2d 159, 163 (7th Cir.1987));
*see also TMT Trailer Ferry*, 390 U.S. at 437, 88
S.Ct. 1157 (holding that bankruptcy court must have
the facts in order to make an informed and
independent decision).

Although published Sixth Circuit case law on Rule
9019 settlements is relatively sparse, in unpublished
decisions the Court of Appeals and Bankruptcy
Appellate Panel have consistently reaffirmed their
adherence to the "fair and equitable" standard. *See
Lyndon Prop. Ins. Co. v. Katz*, 196 Fed.Appx. 383,
387 (6th Cir. 2006); *Bard v. Sicherman* (*In re
Bard*), 49 Fed.Appx. 528, 530 (6th Cir. 2002); *In re
Fishell*, 47 F.3d 1168, 1995 WL 66622, at *3 (6th
Cir. Feb.16, 1995) (unpublished table decision);
*Cook v. Terlecky* (*In re Cook*), 336 B.R. 600, 2006
WL 13114, at *3 (6th Cir. BAP Jan. 4, 2006)
(unpublished table decision); *Porter Drywall Co. v.
Haven, Inc.* (*In re Haven, Inc.*), 326 B.R. 901, 2005
WL 927666, at *3 (6th Cir. BAP April 7, 2005)
(unpublished table decision). Further, the vast
majority of appellate courts that have addressed the
issue have relied upon the same or similar criteria.
No appellate court has rejected, either expressly or
implicitly, the efficacy of this approach.

(Emphasis added). The four factors that courts generally consider
in evaluating whether a compromise is "fair and equitable" are:

(a) The probability of success in the litigation; (b)
the difficulties, if any, to be encountered in the
matter of collection; (c) the complexity of the
litigation involved, and the expense, inconvenience
and delay necessarily attending it; (d) the paramount
interest of the creditors and a proper deference to
their reasonable views.

*In re High Tech Packaging, Inc.,* 397 B.R. 369, 372 (Bankr. N.D.
Ohio 2008)(citing *In re Fishell,* 47 F.3d 1168, 1995 WL 66622, at
*3 (6th Cir.1995) (unpublished table decision); *Bard v. Sicherman*

5

(In re Bard), 49 Fed. Appx. 528, 530 (6th Cir.2002)). "The trustee has the burden to establish that a motion to compromise is appropriate with respect to these considerations." *High Tech Packaging*, 397 B.R. at 372.

499 B.R. at 581-83.

## C. The Trustee's proposed settlement with the Ackerman Defendants

The primary component of the proposed settlement between the Trustee and the Ackerman Defendants, and the primary focus of the objections to the settlement, is the Trustee's proposal to pay fees and expenses totaling $361,118.00 to one of the Ackerman Defendants, Ackerman & Ackerman, P.C. (the "Ackerman Firm"), for that firm's work in representing the Debtor, Michael McInerney, in a state law action that the Trustee recently settled for $1 million. The objecting creditors argue that the proposed payment is unreasonably high.

## D. Background regarding the Becker Action and the Ackerman Firm's fee claim

To place the objections in proper perspective, some background is necessary. The state law action (the "Becker Action") was filed by McInerney in 2009, against Charles E. Becker and Becker Ventures, LLC (the "Becker Parties") in the Oakland County, Michigan Circuit Court. McInerney sought damages in excess of $9 million, based on claims of breach of contract; breach of fiduciary duty; unjust enrichment; and promissory estoppel. The suit arose out of two written agreements and an alleged oral agreement entered into between McInerney and the Becker Parties. This Court described and discussed the Becker Action at length in its first settlement opinion in this case. *See McInerney*, 499 B.R. at 576-80, 584-97.

Before McInerney filed his voluntary petition in this bankruptcy case on July 12, 2011, under Chapter 11, he had been represented initially in the Becker Action by the Bush Seyferth

6

firm. That firm had represented McInerney on an hourly-rate basis. After that firm withdrew,

McInerney was represented by the Ackerman Firm. The Ackerman Firm was retained under a

contingency-fee agreement with McInerney. Under that agreement, the parties agreed that the

Ackerman Firm would be paid a fee "from the proceeds of the recoveries" from the claims

against the Becker Parties, "a fee of 33-1/3 % of all monies recovered."[2] In addition, McInerney

agreed "to pay and reimburse to the law firm all costs, disbursements, and expenses incurred or

deemed necessary by the law firm in handling the client's case."[3]

By the time McInerney filed his Chapter 11 bankruptcy case, the state trial court in the

Becker Action had granted summary disposition in favor of the Becker Parties on McInerney's

claims, and had denied a motion for reconsideration filed by McInerney. And McInerney had

appealed those decisions to the Michigan Court of Appeals. While that appeal was pending, but

before briefs were filed in the Michigan Court of Appeals, McInerney filed his Chapter 11 case.

As debtor-in-possession in the Chapter 11 case, McInerney filed a motion seeking

approval to employ the Ackerman Firm, to continue representing him in the Becker Action.

Objections were filed, and the Court held a hearing and ultimately granted McInerney's motion,

with modifications. In its Order filed November 9, 2011, this Court approved McInerney's

employment of the Ackerman Firm as special counsel, on the same contingency-fee basis as in

the pre-petition Contingent Fee Retainer Agreement.[4]

---

[2] Contingent Fee Retainer Agreement at ¶ 3 (Docket # 646, Exh. F).

[3] *Id*. at ¶ 4.

[4] *See* Order Conditionally Granting Debtor's Motion for Order Authorizing the Employment of Ackerman & Ackerman, P.C. as Special Counsel for Debtor, filed November 9, 2011 (Docket # 96); Stipulation related to Order Conditionally Granting Debtor's Motion [etc], filed November 11, 2011 (Docket # 101).

While this bankruptcy case was in Chapter 11, the Ackerman Firm did substantial work, including the filing of extensive briefs in the Michigan Court of Appeals.[5]

McInerney failed to obtain confirmation of a Chapter 11 plan, and on November 2, 2012, the Court converted this case to Chapter 7.[6]

After the conversion, the Chapter 7 Trustee chose not to employ the Ackerman Firm to represent him in prosecuting the Becker Action. Thus, the Ackerman Firm's representation of the bankruptcy estate in the Becker Action was terminated.

At the time of the conversion to Chapter 7 and the termination of the Ackerman Firm's employment as counsel in connection with the Becker Action, the status of that state court action was that McInerney's appeal had been fully briefed in the Michigan Court of Appeals, and was awaiting an oral argument date. The Chapter 7 Trustee and his counsel did no substantive work on the case in the Michigan Court of Appeals. Basically their only work on the matter in that court was to seek and obtain several delays by the Michigan Court of Appeals in setting any oral argument date, pending the outcome of the Trustee's efforts to settle the case and obtain bankruptcy court approval of the settlement.

The Chapter 7 Trustee and his counsel (Wolfson Bolton PLLC) investigated and evaluated the claims against the Becker Parties, and negotiated and sought approval of an initial proposed settlement that was denied by the Court, and a second, higher settlement that was approved by this Court.

On March 11, 2013, the Chapter 7 Trustee filed a motion seeking approval to

---

[5] Copies of the appeal briefs are at Docket ## 481 and 513 in this case.

[6] *See* Order [etc], filed November 2, 2012 (Docket # 413).

8

compromise, on behalf of the bankruptcy estate, the Becker Action, for $250,000.[7] Several

creditors objected, including the Ackerman Firm, and the Court ultimately denied the Trustee's

settlement motion as unreasonably low. The Court's opinion and the related order were filed on

October 17, 2013.[8] (The Court's opinion is published as *In re McInerney*, 499 B.R. 574 (Bankr.

E.D. Mich. 2013).)

The Trustee then negotiated a higher settlement with the Becker Parties, this time in the

amount of $1 million. The Trustee moved for approval of that higher settlement on November

13, 2013.[9] Several creditors objected to that motion, including the Ackerman Firm, but the Court

approved that higher settlement, in an opinion and related order filed August 7, 2014.[10] (The

Court's opinion regarding the second settlement motion is reported as *In re McInerney*, 516 B.R.

171 (Bankr. E.D. Mich. 2014).) The Becker Parties then paid the $1 million settlement amount

to the bankruptcy estate.

The proposed settlement between the Trustee and the Ackerman Defendants that is now

before the Court proposes to settle a number of disputed matters between those parties. These

include the issue of what the Ackerman Firm is entitled to as a fee and reimbursement for

expenses, for its work on the Becker Action before the filing of the bankruptcy case and during

the Chapter 11 phase of the bankruptcy case. Under the proposed settlement, the Trustee would

pay the Ackerman Firm $361,118.00, to include both a fee and reimbursement for expenses. The

---

[7] Motion (Docket # 481).

[8] Docket ## 545, 546.

[9] Docket # 557.

[10] Docket ## 614, 615.

9

Ackerman Firm, in return, would deem that payment a full settlement of its claim to have a secured fee claim, secured by a common law attorney charging lien against the proceeds of the $1 million Becker settlement. And the Ackerman Firm would waive any Chapter 11 administrative expense claim that it may have, for its work as court-approved special counsel for the debtor-in-possession.

### E. Discussion of the objections to the Trustee's proposed fee payment to the Ackerman Firm

The Trustee, the Ackerman Defendants, and the creditors objecting to the proposed settlement all agree that because the Ackerman Firm was terminated as counsel for the bankruptcy estate before completing its work as counsel in the Becker Action, including the pending appeal in the Michigan Court of Appeals, the Ackerman Firm's contingent fee agreement no longer directly applies to determine its right to a fee. Rather, the parties all agree, under Michigan law, the Ackerman Firm is entitled to compensation for the reasonable value of its services on the basis of quantum meruit. *See e.g.*, *Morris v. City of Detroit*, 472 N.W. 2d 43, 47 (Mich. Ct. App. 1991); *Island Lake Arbors Condominium Assn. v. Meisner & Associates, P.C.*, 837 N.W. 2d 439, 440, 445-48 (Mich. Ct. App. 2013).

The Ackerman Firm contends that it has a common law charging lien under Michigan law against the $1 million proceeds of the Trustee's settlement of the Becker Action, to secure payment of its quantum meruit fee. *See, e.g., Ambrose v. The Detroit Edison Co.*, 237 N.W. 2d 520, 522, 524 (Mich. Ct. App. 1976)(citations omitted)("[t]he law creates a lien of an attorney upon the judgment or fund resulting from his services, . . . [and] where an attorney [who withdraws] is justified in refusing to continue in a case, he does not forfeit his lien for services

10

already rendered.'") In addition, and to the extent it does not have a secured claim for its fee, the Ackerman Firm claims to have an allowable Chapter 11 administrative expense claim for its fee, because of the substantial work that it did on the state court appeal while acting as court-approved special counsel for McInerney when he was the debtor-in-possession in the Chapter 11 phase of this bankruptcy case.

As noted above, a series of three different law firms worked on the Becker Action, on behalf of McInerney and then the bankruptcy estate. Initially, the Bush Seyferth firm represented McInerney during part of the pre-bankruptcy period. That firm worked on an hourly basis, and after withdrawing from the case, sued McInerney for unpaid fees. The Bush Seyferth firm ultimately obtained a judgment against McInerney in state court for $300,000, and filed a non-priority unsecured claim in this bankruptcy case, in the amount of $301,114.86.[11]

The Ackerman Firm represented McInerney after the Bush Seyferth firm withdrew, and its work continued after McInerney filed his Chapter 11 bankruptcy case, and until that case was converted to Chapter 7. After the conversion, the Chapter 7 Trustee's counsel, Wolfson and Bolton, PLLC, took over the representation. That firm has not yet filed a fee application, and the record presently before the Court does not enable the Court to determine or estimate how much in fees and expenses the Trustee has incurred for his counsel's work on the Becker Action.

The creditors objecting to the Trustee's proposed settlement do not dispute that the Ackerman Firm is entitled to some fee and reimbursement of expenses, on a quantum meruit basis for its work on the Becker Action. But they argue, for a variety of reasons, that the fee and expense amount the Trustee proposes to pay the Ackerman Firm — $361,118.00 — is so

---

[11] *See* Claim No. 13-1, filed October 31, 2011.

11

unreasonably high that the Court should not approve the settlement.

The creditors argue that the proposed settlement amount actually exceeds the maximum amount that the Ackerman Firm could obtain in litigation, applying Michigan law quantum meruit principles.  In the 1991 case of *Morris v. City of Detroit*, the Michigan Court of Appeals described those principles in this way:

> [I]n this case [the attorney], who had entered into [a contingent fee] agreement, was discharged before completing one hundred percent of the services contracted for under the contingency fee agreement. Therefore, the contingency fee agreement no longer operated to determine [the attorney's] fee, and [he] was entitled to compensation for the reasonable value of his services on the basis of quantum meruit, provided that his discharge was wrongful or his withdrawal was with cause.
>
> . . .
>
> We recognize that there is no precise formula for assessing the reasonableness of an attorney's fee. Nevertheless, in *Crawley v. Schick*, 48 Mich. App. 728, 737, 211 N.W.2d 217 (1973), this Court enumerated several nonexclusive factors appropriately considered for such a determination, including:
>
>> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.
>
> While the trial court should consider these factors, its decision need not be limited to these guidelines.
>
> . . .
>
> We believe that the trial court may also properly consider that the attorney originally agreed to render services on a contingency basis.  Such a consideration would allow the court to consider the degree of risk undertaken by an attorney who was prematurely discharged. Accordingly, it would be appropriate for the court to award the attorney a larger fee, provided that the fee was not in

12

> excess of that permitted under MCR 8.121. An award of attorney
> fees will be upheld on appeal unless the trial court's determination
> of the "reasonableness" issue was an abuse of discretion.

472 N.W. 2d at 47-48 (citations omitted).[12]

More recently, in the 2013 case of *Island Lake Arbors Condominium Assn. v. Meisner & Associates, P.C.*, the Michigan Court of Appeals refined the quantum meruit analysis to be applied, at least in the case like this one, where the terminated attorney represented a party in a non-personal injury case on a contingency fee basis. The attorney in *Meisner* represented the plaintiff in a civil action against a condominium developer/builder. The fee agreement provided the attorney with a "reduced hourly rate supplemented by a 12 percent contingency fee, which would be calculated based on the cash value of any judgment or settlement reached with [the Defendant]." 837 N.W. 2d at 440. The attorney provided legal services for about 18 months before the client terminated the attorney and retained new counsel. *Id*. The client had paid the attorney the agreed, reduced hourly-rate portion of his fee, but later, the client filed a declaratory judgment action, asserting that it owed the attorney no additional legal fees for the contingency part of the retainer agreement, from any recovery on the claim against the defendant in the civil action.

The Michigan Court of Appeals held that the attorney was entitled to a contingency fee for the contingency part of the agreement, based on "the quantum meruit approach described in" prior cases including *Morris*. *Id*. at 445. Among other things, the Court in *Meisner* adopted the

---

[12]  The *Morris* court's reference to MCR 8.121 is to a Michigan Court Rule that applies to contingency fees in actions "for personal injury or wrongful death," and that limits such a contingency fee to a maximum of "one-third of the amount recovered." *See* MCR 8.121(A) and (B). This Michigan Court Rule would not apply even in state court to the Ackerman Firm's contingency fee in the Becker Action, because the claims in that action were not for "personal injury or wrongful death."

13

following rule:

> In this case of first impression, we hold that the quantum meruit
> recovery of a discharged attorney is capped by the contingency-fee
> percentage set forth in the contract, applied to the amount of the
> recovery attributable to the attorney's work.

837 N.W. 2d at 446.

While the passage just quoted from *Meisner* refers to the calculation — "the contingency-fee percentage set forth in the contract, applied to the amount of the recovery attributable to the attorney's work" — as a *cap* on the attorney's quantum meruit recovery, *Meisner* then applied that calculation as the appropriate quantum meruit fee; not just the cap on such fee. The court held that in this context, the attorney's quantum meruit fee is *not* to be calculated by multiplying the number of hours worked by a reasonable hourly rate. Rather, the method of calculation is for the fact finder to *determine what portion of the cash value of the settlement is attributable to the attorney's work, and apply the contractual contingency-fee percentage to that amount*. The Court of Appeals explained this as follows:

> On remand, the fact finder must determine how much money
> Meisner is owed. The *Reynolds* Court instructed, "[Q]uantum
> meruit is generally determined by simply multiplying the number
> of hours worked by a reasonable hourly fee." *Reynolds*, 222
> Mich.App. at 28, 564 N.W.2d 467. However, the *Reynolds* Court
> then specifically referred to the portions of *Morris* and *Plunkett*
> directing that the contractual terms must also govern reasonable
> compensation for services rendered. In this case, as in *Morris*,
> those terms included a contingency arrangement. Thus, **we
> emphasize that it would be inappropriate to calculate
> Meisner's quantum meruit recovery on the basis of the number
> of hours worked multiplied by a reasonable hourly fee**. In their
> contract, the parties deliberately spurned an arrangement based
> solely on an hourly fee, and instead agreed that if it completed the
> work, Meisner would share a percentage of the recovery. Since
> Meisner's hourly fees have been paid, the remaining fact to be

14

determined is the portion of the ultimate recovery attributable to Meisner's contribution.

> **After the cash value of the settlement has been determined according to the method set forth in Meisner's contract with [the client], the fact finder must consider and compare the contributions to that recovery made by both Meisner and successor counsel. Once that determination has been made, Meisner is entitled to 12 percent of the recovery attributable to Meisner**. This method comports with the meaning of quantum meruit:" 'as much as deserved.'" . . . It also compensates Meisner according to the "actual deal struck between the client and the attorney[.]" *Reynolds* 222 Mich.App. at 30, 564 N.W.2d 467. The bargained-for-value percentage memorialized in the contract governs Meisner's recovery, which flows from Meisner's contribution to the outcome.

837 N.W. 2d at 448-49 (citations omitted; emphasis added).

The Court will now apply these principles from the *Meisner* case to this case.

The cash value of the settlement of the Becker Action is $1 million. The present record does not yet permit the Court to determine what portion or percentage of that total $1 million recovery is "attributable to" the Ackerman Firm, rather than attributable to the work done by successor counsel (the Trustee's counsel, the Wolfson Bolton firm, who took over as counsel after the Ackerman Firm was terminated.) As a result, the Court is unable to determine, or reasonably estimate, what the quantum meruit fee recovery likely would be for the Ackerman Firm, if the settlement were not approved and the issue had to be litigated.

But the present record does permit the Court to determine, for the reasons explained below, that the Trustee's proposed settlement amount would pay the Ackerman Firm more than the maximum amount that firm could possibly recover, even if the entire $1 million settlement amount is solely attributable to the Ackerman Firm's work.

15

The Ackerman Firm's retainer agreement entitled it to a contingent fee of "33-1/3 percent of all monies recovered" for McInerney in the Becker Action, plus reimbursement of "all costs, disbursements, expenses incurred or deemed necessary by the law firm in handling [the] case." The Trustee and the objecting creditors disagree about the meaning of this contract language. The Trustee contends that it means that the fee is calculated as one-third of the gross amount recovered in the settlement plus expenses. The objecting creditors, on the other hand, argue that this language means that the fee must be calculated as one-third of the net amount recovered, after first deducting expenses from the gross amount of the settlement.

The objecting creditors also argue, and the Trustee does not seriously dispute, that the documented expenses of the Ackerman firm should be viewed as no more than $34,319.25. The Ackerman firm's revised statement of expenses in the record totals $94,499.04, but that amount includes five payments that the Ackerman Firm made in 2009 to the Bush Seyferth firm, totaling $60,179.79, as partial payment of the Bush Seyferth firm's hourly-rate fees for work on the Becker Action.[13] That $60,179.79 amount, however, cannot be considered compensable expenses under the Ackerman Firm's retainer agreement. Rather, that amount represents advances under a loan that Alan Ackerman and/or the Ackerman Firm made to McInerney, which is a part of the other claims made by those parties in this bankruptcy case.[14]

Assuming that the remaining $34,319.25 of expenses are properly compensable under the

---

[13] Docket # 646, Exh. J., p. 1.

[14] *See* Claim No. 28-2, filed by Alan Ackerman; Claim No. 29-2, filed by the Ackerman Firm. The Trustee's proposed settlement with the Ackerman Defendants includes an agreed reduction in the allowed amount of the Ackerman Firm's claim, and an agreed *increase* in the allowed amount of Alan Ackerman's claim. The Trustee has not demonstrated the basis or explained the reasoning for these components of the proposed settlement.

Ackerman Firm's retainer agreement, the calculation of the Ackerman Firm's quantum meruit contingent fee under the *Meisner* case would be made in one of two ways, depending upon whether the Trustee is correct in his interpretation of the retainer agreement or whether the objecting creditors are correct in their interpretation. The following calculation illustrates the difference, and assumes, for discussion purposes only, that the entire $1 million settlement from the Becker Action is attributable 100% to the Ackerman Firm, with 0% attributable to the successor counsel.

First, under the Trustee's view of the retainer agreement, the fee would be $333,333.33 (one-third of $1 million) plus expenses of $34,319.25, for a total of fee and expenses of $367,652.58.

Under the objecting creditors' view, however, the calculation is as follows. The net recovery from the settlement is $1 million minus expenses of $34,319.25, which equals $965,680.80. One-third of that amount is $321,893.60, which when added to the expenses, means a total of fee and expenses of $356,212.85 ($321,893.60 + $34,319.25 expenses = $356,212.85).

As between these two competing methods of calculation, the Court concludes that the creditors' view is correct, and that the Trustee's interpretation is incorrect. The Court finds that the retainer agreement is ambiguous, in using the phrase "a fee of 33-1/3% of all monies recovered," as to whether the fee is one-third of the gross recovery or one-third of the net recovery (after reduction of expenses). But that ambiguity must be resolved in favor of the creditors' view, based upon the deposition testimony of Alan Ackerman. Mr. Ackerman testified that his understanding of the fee agreement is for a fee of one-third of the net recovery, calculated

17

after first deducting expenses:

> Q. What is your arrangement relative to fees today?
>
> A. My understanding of the free is I get one-third of the benefit, or one-third of the proceeds. In other words, if I get a $6 million award, . . ., then my fee is one-third of $6 million. Of course the costs come off first. Basic contingent fee.
> . . .
>
> Your understanding is that regardless of what goes on on Becker's claims against McInerney, you're entitled to a third of any recovery McInerney has against Becker net of cost?
>
> A. Yes.[15]

The Ackerman Firm, through Alan Ackerman, therefore, has admitted that the less generous method of calculating the contingent fee, as one-third of the net recovery, as argued by the objecting creditors, is the correct method under the Ackerman Firm's retainer agreement.

Applying that method of calculation, the *maximum* quantum meruit fee that the Ackerman Firm could obtain under Michigan law, even if the entire $1 million settlement recovery in the Becker Action were viewed as 100% attributable to the Ackerman Firm, is a total of $356,212.85 for fees and expenses. The Trustee's proposed settlement would pay the Ackerman Firm $361,118.00 in fees and expenses, and therefore exceeds, by *at least* $4,905.15, the absolute maximum that the Ackerman Firm could obtain without the settlement.[16]

---

[15] Deposition testimony of Alan Ackerman, October 25, 2010 (Docket # 646, Exh. B, Tr. at 45-46).

[16] Even if the Court were to use the Trustee's method of calculating the contingent fee under the retainer agreement, the total fee plus expense amount the Trustee proposes to pay the Ackerman Firm is 98% of the maximum the Ackerman Firm could recover, *if* it is viewed as 100% responsible for the $1 million settlement (which it is not). ($361,118.00 = .9822 of $367,652.58). Even under this view, the proposed settlement amount is unreasonably high.

But the $1 million settlement recovery is *not* 100% attributable to the work of the

Ackerman Firm, as compared to the portion that is attributable to the work done by the

Trustee's counsel after this case converted to Chapter 7. The Ackerman Firm's work no doubt

substantially contributed to the ultimate $1 million settlement recovery. But so did the work of

the Trustee's counsel.[17] So the Trustee's proposed settlement amount substantially exceeds the

maximum possible fee plus expense recovery that the Ackerman Firm could obtain under

Michigan law quantum meruit principles.

For these reasons alone, it is clear that the Trustee's proposed settlement with the

Ackerman Defendants is so unreasonably high that it cannot be approved. The Trustee has failed

to meet his burden of demonstrating that the proposed settlement with the Ackerman Defendants

is fair and equitable and in the best interest of creditors and the bankruptcy estate.

## III. Conclusion

For the reasons stated in this opinion, the Court will enter an order denying the Trustee's

Motion, and disapproving the proposed settlement.

**Signed on December 24, 2014**                    /s/ Thomas J. Tucker
                                                   **Thomas J. Tucker**
                                                   **United States Bankruptcy Judge**

---

[17] This is so even though the Trustee and his counsel initially proposed a settlement of the Becker Action that the Court disapproved as too low.